FRANK P. TOWLE *vs.* EDWIN M. MORSE.

Somerset.    Opinion December 9, 1907.

*Highways.    Automobiles.    Negligence.    Proximate Cause.   R. S., chapter 24, section 9.*

With respect to the methods of travel and transportation on the highway, as in all other spheres of action, the law seeks to adapt itself to the new conditions arising from the progress of invention and discovery. The ordinary highway is open to all suitable methods of use and automobiles are now recognized as legitimate means of conveyance on such highways. The fact that horses unaccustomed to seeing them are likely to be frightened by the unusual sound and appearance of them, has not been deemed sufficient reason for prohibiting their use but it is an element in the question of due care on the part of the drivers of both horses and motor cars, and a consideration to be entertained in determining whether such care has been exercised to avoid accident and injury in the exigencies of the particular situation.

A person with a horse and wagon and a person with an automobile have a right to use the highways with their respective vehicles but it is the duty of each to exercise his right with due regard to the corresponding rights of the other.

In the case at bar, the plaintiff and his sister were riding in an open wagon drawn by one horse and discovering the canopy top of an approaching automobile in which the defendant and a companion were traveling, the sister gave the statutory signal by raising the hand for the automobile to stop. The defendant disregarded the signal to stop and ran the automobile out of the highway two or three rods into a dooryard. The plaintiff was thereby induced to believe that he could drive along in safety, but the automobile unexpectedly turned and reappeared in the highway directly in front of the plaintiff frightening his horse and causing personal injuries to the plaintiff. The verdict was for the plaintiff for $225.

If the defendant had regarded the signal and promptly stopped his machine, the plaintiff would have had an opportunity to drive into the dooryard himself as he intended to do. If the defendant had kept his car stationary for a few seconds in the dooryard, the plaintiff could have driven along the highway in safety. The defendant did neither of these things; but having induced the plaintiff to believe that the car would remain beyond the area of danger, he suddenly reappeared with it in front of the plaintiff

partly in the highway. His explanation of this management of his car was that the team was so far up the road that it had passed out of his mind. This must be deemed thoughtless inattention on his part, and "thoughtless inattention" has been declared by the court of this State to be the " essence of negligence."

*Held:* That the defendant's thoughtless inattention under the circumstances stated was a failure of duty on his part toward the plaintiff and the proximate cause of the injury, and that the verdict in favor of the plaintiff was warranted by the evidence.

On motion by defendant. Overruled.

Action on the case brought by the plaintiff to recover damages for personal injuries received by him as the result of the alleged failure of duty on the part of the defendant toward him in the use and management of his automobile on the public highway between Pittsfield and Palmyra. Plea, the general issue.

Tried at the March term, 1907, of the Supreme Judicial Court, Somerset County. Verdict for plaintiff for $225. The defendant then filed a general motion to have the verdict set aside.

The case appears in the opinion.

*Manson & Coolidge*, for plaintiff.

*Gould & Lawrence*, for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, CORNISH, KING, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict of $225 for personal injuries received by him as a result of the alleged failure of duty on the part of the defendant toward him in the use and management of his automobile on the public highway between Pittsfield and Palmyra. The case comes to the Law Court on a motion to set aside the verdict as against the evidence upon the question of the defendant's liability.

In his amended declaration the plaintiff thus states his cause of action : "The defendant, being the owner, operator and manager of an automobile, was then and there running said automobile, on said public highway toward the plaintiff, and when the defendant with his automobile as aforesaid arrived at a distance of one hundred feet from the plaintiff with a loud voice requested the

'defendant to stop said automobile, and visibly signalled by putting up the hand to the defendant to stop said automobile; but the defendant negligently and unlawfully continued to run at a high rate of speed said automobile, which was propelled by an exploding gasoline engine, toward the plaintiff until the defendant with said automobile arrived within thirty feet of the plaintiff, when said defendant 'did then and there negligently and unlawfully stop said automobile in the middle of said public highway; and the defendant did then and there go away and leave said automobile there standing without shutting off said exploding gasolene engine, but negligently and unlawfully allowed it to produce a loud noise."

It is further alleged in conclusion that "on account of the aforesaid unlawful and negligent act of the defendant in operating his automobile" the plaintiff's horse became frightened, and the plaintiff was violently thrown to the ground and injured.

Although the averment in the plaintiff's declaration thus characterizes the alleged failure of duty on the part of the defendant as a single "unlawful and negligent act" it will be seen that when analyzed, it in fact comprises three distinct acts of negligence, viz: First, in negligently and unlawfully continuing to run his automobile after receiving the signal to stop. Second, by stopping the car "in the middle of the public highway." Third, in leaving the car in that situation without shutting off the exploding gasolene engine, and thus allowing it to "produce a loud noise."

There is less than ordinary discrepancy in the testimony relating to the material facts and vital questions involved in the controversy. The responsibility resting upon the jury was not so much to reconcile conflicting evidence as it was to deduce the legitimate conclusion from facts proved or admitted.

On the morning of August 9, 1906, the plaintiff and his sister were riding in an open wagon drawn by a horse five and a half years old, on the highway leading from Palmyra towards Pittsfield. It is not questioned by the defendant that the horse was ordinarily gentle and well trained and reasonably suitable for driving upon the highway. They were traveling southerly and when near the residence of Mr. Keirstead, situated on the easterly side of the road and at a

little distance therefrom, they discovered the canopy top of an approaching automobile, a touring car, in which the defendant and his companion, Mr. Whitman, were traveling northerly. The distance between the parties at this moment is estimated by the plaintiff at 100 feet and by the defendant at 500 feet. The marked difference of opinion upon this point, however, did not become of great importance. The plaintiff says that as the road was narrow where they were likely to meet, he "hollered" to attract the defendant's attention when he saw the top of the car, and as soon as the occupants came into view, his sister raised her hand as the signal for them to stop, and the defendant admits that he saw this signal. At this juncture the plaintiff's team was north and the automobile was south of Mr. Keirstead's residence. A short distance from the highway the driveway leading from Keirstead's house diverges in two directions, one branch turning northerly and the other southerly thus forming a triangle with the highway for a base, which was about two rods long. Within this triangle, "three or four rods" from the highway, stood a post with a mail box upon it.

The defendant admits that he disregarded the signal to stop, and testifies as follows in relation to the course pursued by him : "Seeing that I had plenty of room and would in no way inconvenience them, I went to the farm house where I was going, turned into the yard around the mail box,— the machine was going north,— turned it round and brought it facing south in the driveway and partly in the road in front of the house. The team was so far up the road that it passed out of my mind." He admits that the power was not turned off and that the gasolene engine was left running, but claims that it made no other noise than a slight clicking sound which could not be heard more than five feet away.

After calling and signalling to the defendant, the plaintiff drove along with the intention of driving into Keirstead's yard himself, but when he saw the automobile running "three or four rods" out of the highway beyond the mail box, he assumed that he could drive along in the highway with perfect safety. But when the car circled about the post and came back into the southerly driveway and partly into the highway, a very short distance ahead of the

team, the horse became so frightened that the plaintiff jumped out of the wagon, seized the horse by the head and attempted to lead him past the car. In so doing, he was thrown to the ground and received the injuries of which he complains. The plaintiff insists that while the attempt to extricate his sister and himself from the apparent danger in which the unexpected return of the defendant's car to the highway, had suddenly placed them, might reasonably have been made in several ways, the course adopted by him under the stress of appearances at the time, will be found consistent with ordinary care and prudence even when calmly re-examined after the event. He says it was not practicable to turn about, because the road was too narrow. He could not drive into the yard because the way was obstructed by the automobile. He could not safely remain where he was, because the unexpected return of the car to the highway brought it into close proximity to his team and the horse became so frightened by the appearance of the automobile, the odor of the gasolene, and the noise of the engine, that the plaintiff was justified in believing that the horse could not be controlled by means of the reins alone.

The burden was upon the plaintiff to prove not only that there was a want of ordinary care on the part of the defendant with respect to one of the acts of negligence specified in the declaration, but that such want of care was the proximate cause of the injury. It is provided by section 9 of chapter 24, Revised Statutes, that upon request and signal by putting up the hand from the driver of a horse, the person operating an automobile shall "cause such vehicle to come to a stop as soon as possible and to remain stationary as long as may be necessary to allow such animal or animals to pass." And in the absence of any explanation the failure of the defendant to stop his car in obedience to the plaintiff's signal, would be evidence of negligence on his part and if it had proved to be the real and efficient cause of the injury, it might be sufficient to establish the defendant's liability on that ground alone. But it is manifest that the defendant's failure to stop at that point was not the cause of the injury. Instead of stopping in a narrow road to allow the plaintiff to pass, he ran the machine forward past the

Keirstead driveway and out to the easterly side of the mail box, a distance of three or four rods from the main road, and as the plaintiff had reason to expect the car to remain stationary at that point to enable his team to pass, there appeared to be excellent opportunity for him to proceed in safety. The plaintiff acted upon this appearance and was driving along past the northerly approach to the Keirstead house when the immediate return of the automobile to the highway created a new and dangerous situation. It is claimed that the conduct of the defendant which produced that situation was thoughtless and inconsiderate and without due regard for the safety of the plaintiff.

It is not contended, however, that the court can say as a matter of law that on receiving the statutory signal to stop, it was the duty of the defendant in the first instance to run his car entirely outside of the traveled way in order to give the plaintiff a safe passage. Both the plaintiff and the defendant had the right to use the highway with their respective vehicles, and each must exercise his right with due regard to the corresponding rights of the other. With respect to the methods of travel and transportation on the highway, as in all other spheres of action, the law seeks to adapt itself to the new conditions arising from the progress of invention and discovery. The ordinary highway is open to all suitable methods of use, and as observed by Cooley, C. J., in *Macomber* v. *Nichols*, 34 Mich. 217, "it cannot be assumed that these will be the same from age to age or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic, must admit new methods of use whenever it is found that the general benefit requires them." Automobiles are now recognized as legitimate means of conveyance on the public highway. The fact that horses unaccustomed to see them are likely to be frightened by the unusual sound and appearance of them has not been deemed sufficient reason for prohibiting their use, but it is an element in the question of due care on the part of the drivers of both horses and motor cars, and a consideration to be

entertained in determining whether such care has been exercised to avoid accident and injury in the exigencies of the particular situation.

In the case at bar the defendant was duly apprised of the plaintiff's apprehension that his horse would be frightened by the car. If he had regarded the signal and promptly stopped his machine, the plaintiff would have had the opportunity to drive into the Keirstead door yard as he intended to do. If the defendant had kept his car stationary for a few seconds on the easterly side of the mail box, the plaintiff could have driven along the highway in safety. The defendant did neither of these things; but having induced the plaintiff to believe that the car would remain beyond the area of danger, he suddenly reappears with it in front of the plaintiff, partly in the highway. His explanation of this extraordinary management of the car is that the team was so far up the road that it had passed out of mind. This must be deemed thoughtless inattention on his part, and "thoughtless inattention" has been declared by this court to be the "essence of negligence." *Tasker* v. *Farmingdale*, 85 Maine, 523.

It is also the opinion of the court that this thoughtless inattention on the part of the defendant was the proximate cause of the injury, and that the conclusion reached by the jury was warranted by the evidence.

*Motion overruled.*