[No. 27780. Department Two. April 15, 1940.]

JOAN ECKERSON, *by Harold Eckerson, her Guardian ad Litem, Respondent,* v. FORD'S PRAIRIE SCHOOL DISTRICT NO. 11 OF LEWIS COUNTY, *Appellant.*[1]

[1]Reported in 101 P. (2d) 345.

*Lloyd B. Dysart,* for appellant.

*W. Grant Armstrong,* for respondent.

STEINERT, J.—Plaintiff, a minor girl, brought suit by her guardian *ad litem* to recover damages for personal injuries sustained by her while playing on the school grounds of defendant school district. The jury returned a verdict in her favor. From a judgment entered thereon, defendant has appealed.

The assignments of error raise only two questions: (1) whether or not respondent's evidence was sufficient to constitute a cause of action, and (2) whether or not respondent was chargeable with contributory negligence.

Viewing the evidence, as we must, in the light most favorable to respondent, the facts, as the jury was entitled to find them, are as follows: Appellant is a school district of the third class. Its school grounds embrace approximately three acres on the east side of Pacific highway, about a mile northwesterly from Centralia. The school building is a two-story frame structure with a full basement. In the basement are located a furnace room, two recreation rooms, and the boys' and girls' lavatories.

The building has two main entrances, one in front, facing the Pacific highway, and the other directly opposite, in the rear, facing the main playgrounds. Approach to the rear, or east, door, is made from a concrete veranda and one or two steps on the outside of the building. Inside the entrance, one flight of stairs leads upward to the main hall, and another leads downward to the basement. Similar conditions obtain on the front, or west, side of the building. The two main entrance doors are equipped with devices called "stoppers," by which term the parties evidently refer to the usual type of door checks that serve the double purpose of closing doors gently and of keeping them closed.

On the outside of the building, about twenty feet south of the rear entrance, is a concrete stairway and pit leading forward from the playgrounds to the furnace room in the basement. Inasmuch as this stairway is the place where the accident occurred, some detail of description is required.

The stairway, which is three feet, nine inches wide, inside measurement, consists of five concrete steps,

with treads about twelve inches wide, and risers about six and one-half or seven inches high. Bordering the sides and outer end of the pit is a concrete ledge, or apron, twelve inches in width. This apron forms the first step of the stairway and is elevated three and one-half inches above the level of the adjacent playground, which is composed of gravelly soil mixed with clay. This situation, with respect to the apron, has existed for a number of years.

At the foot of the stairway, the depth of the pit is two feet, eight and one-half inches. The distance from the bottom step to the door of the furnace room is one foot, eleven inches. The distance from the outside edge of the top step, or apron, to the door is six feet, eleven inches.

The door leading to the furnace room is three feet, eight inches wide, and seven feet high. Its upper part contains four glass panels, each of which is one foot, four inches square; the lower part has the usual wooden panels. The distance from the lower edge of these glass panels to the bottom of the pit is three feet, nine inches. Thus, the bottom of the glass panels is a little more than one foot above the ground level outside the stairway. The door opens inward and is not equipped with stoppers, nor is there any screen in front of the glass panels.

During the time with which we are presently concerned, and for some time prior thereto, the school had four teachers, including the principal, and an average of one hundred pupils, distributed over eight grades.

During the noon recesses and other intermissions, if the weather permitted, the pupils were required to play outside, on the school grounds, where they were supervised by the teachers; when the weather was inclement, the children played in the basement, where

they were likewise supervised. Although the concrete stairway was primarily intended for ingress to and egress from the furnace room, the children were not only allowed to use it as a means of communication between the playgrounds and basement, but were also permitted to play on and about it. No rules or regulations preventing such use were posted or otherwise brought to the attention of the children.

November 8, 1937, was a cloudy, drizzly day. It had rained quite hard early in the morning, but, at the time of the accident, precipitation had ceased. However, during the noon recess, the majority of the pupils were playing in the basement.

After eating her lunch, respondent, who was twelve years of age, engaged in a game of "tag" with six or eight of her schoolmates. The game has been familiar to school children for generations. One of the players is designated "it," whose object is to overtake and tag one of the others, who in turn becomes "it" and thereupon proceeds in an attempt to tag another. The game on this particular day, so far as we are informed, appears to have started inside the building. A boy, Earl Fox, was "it," and was pursuing the others, including respondent. The chase led through the main rear door onto the playgrounds. Earl, for some reason or other, then abandoned the pursuit of those outside and returned by way of the same entrance to the inside of the building. Apparently, however, he remained "it" to respondent and those on the playground.

Respondent, still participating in the game, proceeded toward the concrete stairway and pit, intending to return to the basement by way of the furnace room, the door of which was standing wide open. Although hurrying, she was not running. Her gait was described as being between a run and a walk. Arriving at the stairway, she stepped with her right foot onto

the twelve inch concrete apron. As she brought her left foot forward, her toe "sort of kicked" against the front edge of the apron projecting above the level of the ground, and threw her slightly off balance. She succeeded, however, in stepping onto the second step with her left foot, and proceeded forward down the steps in their order, attempting all the while to regain her full equilibrium. Describing her progress, she said: "I kept on coming though. I did not figure on falling down."

While she was in the act of stepping down upon the bottom step, intending to proceed through the open doorway, a boy who was crouched behind the door, inside the furnace room, suddenly "slammed" it shut. Respondent, who was then within about two feet from the door, had not yet regained her full balance, and, to protect herself, threw her hands upward and forward. As a result of this movement, her right hand struck against and broke one of the glass panels, causing very serious injuries to her right arm. A girl companion who was descending the steps abreast, or slightly ahead, of her was able to stop without colliding with the door.

Respondent's claim for damages is predicated upon two grounds of alleged negligence: (1) The construction, existence, and maintenance of a dangerous and negligent condition of the premises at the time and place in question; and (2) the failure to establish, promulgate, and enforce adequate rules and regulations governing the play and recreation of students.

The first ground, stated at length, charges negligence in (1) maintaining a ledge at the top of the steps, three or four inches above the level of the playground, (2) failing to maintain rails or a banister along the sides of the steps, (3) having a glass paneled door, unequipped with stoppers, at the foot of the stairway, and

(4) having the door hung in such a way that it opened inward instead of outward. The court withdrew from the jury's consideration the second and fourth grounds. The primary charge of negligence, as now contended by respondent, is the maintenance of the top step, or apron, in its elevated position above the surrounding playgrounds.

It is conceded by both parties that the duty of appellant school district was to exercise such care in the maintenance, use, and supervision of its grounds as an ordinarily reasonable, and prudent person would exercise under the same or similar circumstances, and this we conceive to be the correct rule. *Rice v. School Dist. 302*, 140 Wash. 189, 248 Pac. 388.

It may be admitted, for the sake of argument, that the construction of the apron with an elevation above the surrounding terrain was not, of itself, negligence. Protection of the stairway against seepage of soil and gravel, and against the collection of rubbish, might well have dictated that method of construction. It might be argued, however, that the danger created by the projection might easily have been obviated, without sacrificing any benefit sought to be obtained, simply by adding to the apron a small concrete strip sloping to the ground level.

However, aside from the manner of original construction, the negligence of appellant, as the jury was entitled to find, was in knowingly maintaining a dangerous condition in a portion of the premises used by young children for play, or, stating it conversely, in permitting the children to use the stairway for play while it was in such dangerous condition.

While it might be argued, with some force of reason, that the condition of the stairway presented but little, if any, hazard, and that, in any event, the condition was obvious to those who used the passageway, we do not

believe that it should, or can, be said as a matter of law that there was no negligence in maintaining such condition under the particular circumstances of this case. Taking into consideration the fact that the entire premises were used for play by children of tender years, and having in mind the well known proclivities of youth, it was for the jury to say whether or not, under all the existing circumstances, there was negligence on the part of appellant. The jury, by its verdict, so found, and we cannot now say, as a matter of law, that there was no evidence nor basis to sustain such finding.

Appellant next contends that, even if there were negligence on its part, in the respect just noted, such negligence was not the proximate cause of the injury. There is, of course, a distinction between an actual cause, or cause in fact, and a proximate, or legal, cause.

An actual cause, or cause in fact, exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought, that is, when the injury would not have resulted "but for" the act in question. But a cause in fact, although it is a *sine qua non* of legal liability, does not of itself support an action for negligence. Considerations of justice and public policy require that a certain degree of proximity exist between the act done or omitted and the harm sustained, before legal liability may be predicated upon the "cause" in question. It is only when this necessary degree of proximity is present that the cause in fact becomes a legal, or proximate, cause.

The most usual definition of proximate cause of an event is: that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred. *Hellan v. Supply Laundry*

*Co.*, 94 Wash. 683, 163 Pac. 9; 1 Sherman & Redfield, Negligence (6th ed.), § 26; 1 Cooley on Torts (3d ed.), 124.

■ There can be little doubt that the elevated condition of the top step, or apron, was an actual cause, or cause in fact, of respondent's stumbling, and, further, that but for the position of the unscreened, glass-paneled door in close proximity to the foot of the stairway, the accident would not have resulted in the way that it did.

From the evidence in the case, the jury could logically find that these factors, taken in connection with the fact that the children were permitted to play on the stairway, constituted negligence on the part of appellant, and that there was a necessary causal connection between such negligence and the injuries sustained by respondent.

Appellant insists, however, that even if it be held that there was primary negligence on its part, the chain of causation was broken by a new, independent, and intervening act of negligence committed by the boy who suddenly slammed the door shut, and that his act was unforeseeable, and, accordingly, eliminated from appellant's negligence its proximate causality and became, instead, the superseding cause. This contention may be disposed of on either one of two grounds.

■ In the first place, it was within the province of the jury to determine whether the act of the boy was a superseding cause, or simply a concurring one. The jury may well have found, under the evidence, as it apparently did, that the injury was traceable to the negligent condition of the top step, and that such condition was the proximate cause without which the injury would not have occurred; further, that while the negligent act of the boy was also a proximate cause, it merely combined or concurred with the continued

effect of appellant's negligence to produce the result, but did not supersede it.

The rule in such cases, as stated in Restatement of the Law of Torts, 1184, § 439, is that:

· "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

This court has consistently followed that rule. *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64; *Cole v. Gerrick*, 62 Wash. 226, 113 Pac. 565; *Thoresen v. St. Paul & Tacoma Lumber Co.*, 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9; *Duggins v. International Motor Transit Co.*, 153 Wash. 549, 280 Pac. 50; *Caylor v. B. C. Motor Transportation, Ltd.*, 191 Wash. 365, 71 P. (2d) 162; *O'Neil v. Gruhn*, 197 Wash. 557, 85 P. (2d) 1064.

 The other ground upon which appellant's contention may be disposed of, and the point on which it mainly relies, presents the question whether or not the act of the boy in suddenly shutting the door was foreseeable by appellant.

The fundamental basis of the law of negligence is the ability of the actor reasonably to foresee the consequences of his misconduct. If the particular injury was reasonably expectable at the time of the misconduct, then the act of negligence will be regarded as the legal, or proximate, cause of the injury sustained.

The rule, in the type of situation which we are now considering, is thus aptly stated in Restatement of the Law of Torts, 1202, § 449:

. "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act

whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

See, also, Harper on Torts, §§ 111, 119, 122, 123, 124. That rule has been recognized and followed by this court. *Akin v. Bradley Eng. & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. 586; *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9. See, also, *Bracy v. Lund*, 197 Wash. 188, 84 P. (2d) 670, and cases therein cited.

The question, then, is whether or not the independent act of the boy in slamming the door was reasonably foreseeable. We believe that, under the evidence, the jury was warranted in finding that it was. The game that was in progress was of the kind that the children customarily played. The object of the game was, on the part of one, to overtake and tag another, and, on the part of the others, to elude and escape the pursuer. It was reasonably expectable, we think, that, in a hurried endeavor to escape, one of the children would take advantage of shutting a door against another whom he thought was his pursuer, thus impeding her progress.

In *Stovall v. School Dist. No. 49*, 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908, a steel tank had been removed from the basement of the school and left standing for several days on the school grounds. During the interim, some of the boys engaged in play about the tank, rolling it back and forth on the playground. While thus engaged, the plaintiff either fell, or was pushed, from the tank by one of the other boys and was severely injured. One of the contentions made by the school district was that the act of pushing the boy off the tank constituted an intervening cause and relieved the defendant's primary negligence of its proximate causality. In answer to that contention, this court said:

"The injury complained of was a reasonable and probable result of the negligence of the district in permitting the tank to remain upon the playground. The fact that the respondent may have been pushed off the tank, if it be a fact, would not constitute an intervening agency between the original wrong and the injury. The intervention of a third person does not preclude a recovery, if the injury was the natural and probable result of the original wrong."

Appellant, however, contends that the recent case of *Leach v. School Dist. No. 322*, 197 Wash. 384, 85 P. (2d) 666, is controlling of the case at bar. In that case, the school district maintained a bus for the transportation of pupils to and from school. Plaintiff, a thirteen-year-old boy, was waiting to board the bus in front of the school. As a result of being jostled by some of his schoolmates, he lost his balance and fell toward the front doors of the bus. To protect himself, he put his hands against the panes of glass in the doors. The panes broke and the boy was severely injured. The negligence claimed was the failure of the school district to provide the doors with non-shatterable glass panes. It was held that "the situation which presented itself" was not one which was reasonably to have been anticipated.

The situation there was quite different from the one presented here. In that case, the instrumentality which caused the injury was not one which the children were allowed to use for purposes of play, and the sequence of events culminating in the final result was most unusual. It was therefore properly held that the particular occurrence was beyond the range of reasonable expectability. In the case at bar, the premises on which the accident occurred were habitually used by the children in playing games, with the knowledge and consent of the faculty. The condition of the top step was, or should have been, well known to those in charge

of the school. It is a matter of common knowledge that there is a hazard connected with an obstruction of the kind involved here, and that it may cause one to stumble, particularly when the mind of the person is preoccupied, or the attention is diverted. Stumbling at the head of a stairway will more often than not result in injury. Where a door is located within two feet from the bottom step, one of the probable results of stumbling is that the person will collide with the door if it be closed at the time. That the door might suddenly be closed by one engaged in a game of the kind played is, in our opinion, within the ambit of reasonable expectancy. At least, it is a matter upon which a jury could logically arrive at that conclusion.

Appellant finally contends that respondent was guilty of contributory negligence. The rule is that contributory negligence is ordinarily a question of fact for the jury to determine. Under the evidence as heretofore detailed, we think that, upon that issue, a question was presented for the jury's determination.

In view of the conclusion at which we have arrived, it is unnecessary to discuss the other questions suggested.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.