[No. 6043-4-II.   Division Two.   July 23, 1984.]

JOSEPH H. PORTER, JR., ET AL, *Respondents*, v.
ASGHAR R. SADRI, *Appellant.*

*Craig F. Schauermann,* for appellant.

*Steven L. Busick* and *John D. Nellor,* for respondents.

REED, J.—Defendant Asghar R. Sadri (Sadri) appeals from a judgment awarding damages to the Porters for injuries suffered by Mrs. Porter when she fell through a glass window of a house constructed by Sadri.[1] Holding that defendant's negligence did not proximately cause the injury and that defendant is not liable in any event because he had sold the home, and his immediate vendee knew of the defect and any unreasonable risk attendant thereto, we reverse.

Sadri's challenge is to the trial court's failure to dismiss the Porters' complaint at the close of all the evidence. Thus, the truth of Porters' evidence is admitted and all of that evidence and the reasonable inferences therefrom must be viewed in a light most favorable to Porters; this appeal must fail unless Sadri was entitled to judgment as a matter of law. *Parrish v. Ash,* 32 Wn.2d 637, 203 P.2d 330 (1949).[2]

Sadri built the home in 1975, installing adjacent to the front door, and at the bottom of a stairway, a 23–inch by 6–foot 8–inch window or light panel. Construing the evidence most favorably to Porter, one could conclude that Sadri did

---

[1]Porters do not appeal the trial court's reduction of the award by 40 percent because of Mrs. Porter's contributory negligence.

[2]By proper motions Sadri challenged the legal sufficiency of Porters' evidence at every appropriate phase of the trial and post–trial. Thus, contrary to Porters' contention on appeal, the unchallenged findings of the trial court play no part in our review.

not use safety glass, as required by the then existing Clark County Code. Sadri sold the home to Healds in 1976. Sometime during Healds' occupancy, their son threw a baseball through the window in question. The glass shattered into many dangerous shards and slivers, as well as larger pieces.

Upon observing the way in which the window had shattered, Mr. Heald made inquiries about replacing it with safety glass; he intended to seek estimates as to the cost of such material. Before he could do so, however, Mrs. Heald contracted with parties unknown, who installed nonsafety glass similar to that used by Sadri. Nevertheless, Healds allowed it to remain and it was in place when Healds sold to Porters in 1977. In August 1978, Mrs. Porter fell down the stairs, through the window and onto the lawn, sustaining injuries. Porters replaced the pane with safety glass and brought this action against Sadri.

### PROXIMATE CAUSE

██ ██ Basic tort law requires that, in order to be actionable, a negligent act must be a proximate cause of the plaintiff's injuries. *Cook v. Seidenverg,* 36 Wn.2d 256, 217 P.2d 799 (1950). That is to say, the negligence must be "a cause which in a direct sequence, unbroken by any new independent cause, produces the [injury] [event] complained of and without which such [injury] [event] would not have happened." WPI 15.01. When "the facts are taken as undisputed, and the inferences therefrom are plain and do not admit of reasonable doubt or difference of opinion, the question of proximate cause becomes a question of law for the court." *Cook v. Seidenverg,* 36 Wn.2d at 262; *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 558 P.2d 811 (1976).

Here, it is undisputed that Sadri's negligent act was his installation of nonsafety glass, contrary to local safety code. However, it is also undisputed that Sadri's negligence ceased to operate when the glass was broken and entirely removed from its frame by Healds. At that point, Heald

chose to fill the opening with nonsafety glass. It was this glass that shattered and was the direct and proximate cause of Mrs. Porter's injuries.

We do not believe that, as suggested by Porters, Sadri's liability can be predicated on the tenuous assumption that his original use of nonsafety glass was a causative factor of Mrs. Porter's injury, in that the original installation of faulty glass induced Heald to repeat the error. At most, Sadri's negligence merely would be incidental or subsidiary to the controlling cause—Healds' negligent replacement with nonsafety glass. Sadri's act simply provided the condition or occasion that afforded Heald the opportunity to act negligently and produce the injury. Although it may have been a cause in fact, Sadri's act was too remote and not in itself a proximate or efficient legal cause.

> There is, of course, a distinction between an actual cause, or cause in fact, and a proximate, or legal, cause.
>
> An actual cause, or cause in fact, exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought, that is, when the injury would not have resulted "but for" the act in question. But a cause in fact, although it is a *sine qua non* of legal liability, does not of itself support an action for negligence. Considerations of justice and public policy require that a certain degree of proximity exist between the act done or omitted and the harm sustained, before legal liability may be predicated upon the "cause" in question. It is only when this necessary degree of proximity is present that the cause in fact becomes a legal, or proximate, cause.

*Eckerson v. Ford's Prairie Sch. Dist. 11,* 3 Wn.2d 475, 482, 101 P.2d 345 (1940). *See also Guerin v. Thompson,* 53 Wn.2d 515, 335 P.2d 36 (1959). Or, as stated in 57 Am. Jur. 2d *Negligence* § 146 (1971): "Causes of injury which are mere incidents of the operating cause, while in a sense factors, are so insignificant that the law cannot fasten responsibility upon one who may have set them in motion."[3] As

---

[3]Because Sadri's negligence ceased to operate with the first breaking of the window and removal of the glass, thus severing the chain of causation, we have

we suggested at oral argument, the situation before us is akin to that where:

> A constructs an attic ladder with balsa wood rungs. A's vendee, B, discovers this on first use, but replaces the broken rungs with balsa wood. C, B's guest, is injured as a result. Clearly, A would not be held accountable to C.

### RESTATEMENT (SECOND) OF TORTS § 353

Finally, assuming that Sadri's original negligence continued and proximately caused or contributed to Mrs. Porter's injuries, Sadri still is not liable. Under the common law doctrine of caveat emptor the vendor of land does not remain liable for injuries caused by dangerous conditions on the premises once the property has passed from his possession or control. Annot., *Liability of Vendor or Grantor of Real Estate for Personal Injury to Purchaser or Third Person Due to Defective Condition of Premises,* 48 A.L.R.3d 1027 (1973); Restatement (Second) of Torts § 352, comment *a* (1965). Thus, under the common law, Sadri's exposure to suit for use of nonsafety glass terminated upon his 1976 sale to Heald.

■ This court has modified the common law rule, however, by adopting the rationale of Restatement (Second) of Torts §§ 352 and 353, which, under certain conditions, extend a vendor's exposure beyond disposition of the property.[4] *See Dipangrazio v. Salamonsen,* 64 Wn.2d 720,

---

not used a "superseding cause" analysis. *See, e.g., Eckerson v. Ford's Prairie Sch. Dist. 11, supra; Smith v. Acme Paving Co., supra.*

[4]Restatement (Second) of Torts § 352 states:

"Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed *at the time that the vendee took possession.*"

Restatement (Second) of Torts § 353 states:

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

"(a) the vendee does not know or have reason to know of the condition or the

393 P.2d 936 (1964); *Bailey v. Gammell,* 34 Wn. App. 417, 661 P.2d 612 (1983); *Wilson v. Thermal Energy, Inc.,* 21 Wn. App. 153, 583 P.2d 679 (1978); *Seattle–First Nat'l Bank v. State,* 14 Wn. App. 166, 540 P.2d 443 (1975). Thus, in order to prevail under section 353, the injured party must show *inter alia* that the defendant's vendee does not know or have reason to know of the condition or risk involved.

Here, giving Porters every indulgence to which they are entitled when the sufficiency of their evidence has been challenged, they have succeeded in establishing only that Healds received actual knowledge of the dangerous condition when their son shattered the original pane with a ball. Restatement (Second) of Torts § 353's requirement that the vendee not know or have reason to know of the condition or the risk involved was not satisfied and Sadri was entitled to judgment as a matter of law. *Bailey v. Gammell, supra.*

Reversed and remanded for entry of judgment dismissing the action with prejudice.

PETRICH, C.J., and LANGSDORF, J. Pro Tem., concur.

Review denied by Supreme Court October 19, 1984.

---

risk involved, and

"(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

"(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."