[No. 31091. Department One. December 16, 1949.]

LILLIAN JOHNSON, *Appellant,* v. CENTRAL BUILDING COMPANY *et al., Respondents.*[1]

*Levinson & Friedman,* for appellant.

*N. A. Pearson,* for respondent Central Building Company.

*Bogle, Bogle & Gates, Thomas L. Morrow,* and *J. Tyler Hull,* for respondent Retail Credit Company, Inc.

[1]Reported in 212 P. (2d) 796.

GRADY, J.—This action was brought by Lillian Johnson against Central Building Company and Retail Credit Company, Inc., to recover damages for injuries sustained while operating an elevator. The court directed the jury to return a verdict in favor of the respondents. A motion for a new trial was denied. A judgment of dismissal was entered, from which this appeal has been taken.

The evidence, when viewed in a light most favorable to appellant, discloses the following situation: The appellant was employed by Central Building Company in Seattle as an elevator operator. The Retail Credit Company, Inc., was a tenant in the Central Building. Richard Arnold was in the employ of the latter corporation as a messenger.

The elevator cages did not have doors, but at each floor of the building there were two sliding doors that the operator moved back together. The doors were opened by pulling down on a horizontal jointed bar with the left hand. Attached to the bar was what is referred to as a "cup" into which the fingers are inserted, and as the operator pulls down the bar it takes a "V" shape as the doors open. After they are partly open, the operator removes her hand from the cup and pushes on the edge of the inside door until both are fully opened. At this point, the cup and the folded bar are between the elevator cage and the elevator shaft. To close the doors, the operator merely releases them, and a spring mechanism completes the process. If the spring mechanism has a tight adjustment, it takes more pressure to open the doors and they would close more rapidly than if the adjustment was less tense. In the latter circumstance, the door would operate more easily, but would go back further than normal. Prior to the event causing the injuries, the spring tension of the elevator had been lessened by use. This condition was timely reported to the employer but was not remedied.

On the occasion in question, appellant had stopped the elevator at one of the floors. When she had opened the door two or three inches, and while her hand was still in contact with the cup, Richard Arnold, who was on the outside,

placed his hand on the edge of the opening door and shoved it back. The appellant was taken by surprise, did not get her hand away in time, and it was caught between the wall of the elevator cage and the doors. At that time, Arnold was on his way from the offices of his employer to deliver a message. We shall refer to the respective respondents as "Central" and "Retail".

The theory advanced by appellant is that Central was negligent in that the tension of the spring mechanism of the doors to the elevator made it an unsafe and dangerous instrumentality to use, and that the tortious act of Arnold in pushing the door open so combined and concurred with the negligence of Central as to make it and Retail joint tort feasors and liable in damages to her for the injuries she sustained. She contends that the questions of the negligence of both respondents and of proximate cause were for the jury to determine, and bases her argument on the thought that reasonable minds might differ in determining whether the tension of the spring mechanism was such that, had it been tighter, the door would not have yielded so readily to the impetus given it by Arnold, and she might have removed her hand from the cup in time to have avoided injury.

We think, however, appellant is in error in drawing such a conclusion. There was no factual question involved for the jury to determine as to whether the loose tension of the spring made the opening of the elevator doors a hazard to the operator. All it did was to enable the operator to open the doors with slightly less physical effort than if the tension had been greater.

The factor that stands in the way of the argument of appellant is that it must be held as a matter of law that Central could not have reasonably foreseen that a prospective passenger, or other person, might interfere with the door-opening process, and was therefore not negligent in failing either to guard against or warn her against such an event. There would have been no accident but for the act of Arnold. Appellant conceded this when testifying, and we find no room for any difference of opinion on that question.

The injuries sustained by appellant were not a natural or probable consequence of the act of Central in permitting the tension of the spring mechanism to become lessened. In order to sustain her injury, in the absence of negligence on her part, some independent agency would have had to intervene over which Central had no control, and which intervention it could not reasonably have foreseen or anticipated as likely to occur. Central, having furnished appellant a reasonably safe place in which to perform her duties and a reasonably safe instrumentality and method of performance, had complied with its legal duties owing to her. The sole proximate cause of this unfortunate event was the tortious act of Arnold, for whose conduct Central cannot be held responsible.

The controlling rule of law applicable to the situation here presented is found in 1 Labatt, Master & Servant, 303, § 142, as follows:

"A person is not . . . answerable at law for a failure to avert or avoid peril that could not have been foreseen by one in like circumstances, and in the exercise of such care as would be characteristic of a prudent person so situated. In other words, it is not negligence to fail to provide against an accident of such a nature that nobody could have foreseen it, and that no prudence could have anticipated the need of guarding against it."

This authority is quoted in *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A. (N. S.) 364, and in that case we discussed and approved the principles of law therein set forth. The same principles are adopted and applied in *Wilson v. Northern Pac. R. Co.*, 31 Wash. 67, 71 Pac. 713; *Decker v. Stimson Mill Co.*, 31 Wash. 522, 72 Pac. 98; *Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089; 35 Am. Jur. 556, Master and Servant, § 127; 3 Labatt's Master & Servant (2d ed.) 2756, § 1042. We do not seem to have had occasion to consider the questions before us in an employer and employee relationship in later cases, and the principles are so well established we deem it unnecessary to cite cases from other jurisdictions. The cases cited are factually different from this one and discuss and

apply other legal principles not applicable here, but they do support the principles upon which we base this opinion. In *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769, we accepted a prescribed test of negligence involving the idea of reasonable anticipation by quoting as follows:

"The actual result of an act or omission is not controlling in determining whether or not it was negligent, nor is the duty of the person doing or omitting an act to be estimated by what, after an injury has occurred, then first appears to be a proper precaution, but the question of negligence must be determined according to what should reasonably have been anticipated, in the exercise of ordinary prudence, as likely to happen."

The liability, if any, of Retail must depend upon whether the act of Arnold in shoving the elevator doors open was done in the furtherance of its business, and was such an act as may fairly be said to have been expressly or impliedly authorized by his employer. We have expressed the rule as follows:

"While no decisive test can be given for determining whether or not a given act is within the scope of a servant's employment, it is apparent from all the authorities that the act complained of must have been done while the servant was engaged in doing some act under authority from his master; not that, while engaged in the act, he is employed in the master's business; but the act must have been in the furtherance of the master's business and such as may be fairly said to have been either expressly or impliedly authorized by the master." *McQueen v. People's Store Co.,* 97 Wash. 387, 166 Pac. 626; *Van Court v. Lodge Cab Co.,* 198 Wash. 530, 89 P. (2d) 206; *Brazier v. Betts,* 8 Wn. (2d) 549, 113 P. (2d) 34; *Roletto v. Department Stores Garage Co.,* 30 Wn. (2d) 439, 191 P. (2d) 875.

In this case, we have a situation where Arnold left the offices of Retail on a mission in furtherance of its business, but when he undertook to shove open the elevator doors he momentarily stepped aside from that business. This act was his own and had no connection whatsoever with the furtherance of his employer's business. We said in the *Roletto* case, *supra:*

"Outside the scope of his employment, the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant steps aside from his master's business for some purpose wholly disconnected with his employment, the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master."

The appellant relies upon the case of *Hobba v. Postal Telegraph-Cable Co.,* 19 Wn. (2d) 102, 141 P. (2d) 648. In that case, an employee of the telegraph company left its office to deliver a message. While on the way, he passed in front of another messenger boy and momentarily stepped outside of the course of his employment and struck him in a friendly manner. He then resumed the course of his employment to deliver the message, but hastened his mode of locomotion by running instead of walking. While he was prompted to do this because of the expected pursuit which took place, he, nevertheless, was on his way to deliver the message and acting in the furtherance of his employer's business. His locomotion was done in a negligent manner, and he ran into and injured a pedestrian at a point some distance from where he did the playful act. If Arnold had negligently collided with the operator while entering the elevator, we would have a situation comparable to that which existed in the *Hobba* case, as in that event the negligent act of Arnold would be done while he was pursuing the employer's business in delivering the message. The evidence is so plain that Arnold in the act he did was not in the course of his employment and furthering his employer's business that there is no room for any difference of opinion, and hence no question for the jury was presented.

We must hold as a matter of law that Central was guilty of no negligent act proximately contributing to the injuries sustained by appellant, and that the act which was the sole proximate cause of the injuries sustained was not within the range of foreseeability on its part giving rise to any duty to guard against its commission.

We must also hold as a matter of law that the act of Arnold was not committed while acting within the scope of his employment or in the furtherance of his employer's business.

The judgment is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.