[No. 32217. Department One. November 28, 1952.]

JOHN J. KENNETT, *Respondent,* v. DONALD H. YATES *et al., Appellants.*[1]

[1]Reported in 250 P. (2d) 962.

*Gordon H. Sweany* and *Carl P. Zapp*, for appellants.

*Rummens, Griffin & Short* and *Paul R. Cressman,* for respondent.

DONWORTH, J.—In this action, plaintiff sought to recover damages for injuries allegedly suffered as the proximate result of his falling through a door from which defendants had removed a large plate glass panel which had been broken from some unknown cause.

Defendants are the owners of the Smith Tower, a large office building in Seattle, and their property managers who operate the building. Plaintiff is a practicing attorney, who, on February 4, 1948, when the accident occurred, had been a tenant in the Smith Tower for approximately twenty-two years.

In his complaint plaintiff made several allegations of negligence, all of which defendants denied. They also denied the allegations of damages and pleaded as an affirmative defense that if plaintiff had suffered any injuries they were the result of his contributory negligence in failing to keep a proper lookout and in attempting to open the door by placing his hand upon the "glass" instead of upon the door frame. Plaintiff in his reply denied these allegations.

Upon defendants' demand therefor, the action was tried to a jury. The jury viewed the premises prior to the reception of any evidence and later returned a general verdict for defendants. The court thereafter, on plaintiff's motion, granted him a new trial. Defendants have appealed from the order granting a new trial.

The circumstances surrounding respondent's accident are as follows:

The Smith Tower is so constructed that persons may exit from the building on the second floor by way of a side corridor which extends south from the main corridor and opens onto Jefferson street. A person desiring to exit from the building via the Jefferson street corridor enters it at its north end through double doors. As he proceeds along the corridor he approaches, at its south end, the door involved in this case. It is a single door, constructed principally of heavy plate glass which is fitted into a metal door frame. The glass panel is twenty-five inches wide and extends downward to within thirteen inches of the bottom of the door. The door is about thirty-five inches wide and is hinged on the east, or left, side of a person exiting through the doorway.

The door opens outward and has the usual door check or closing mechanism attached at its top. The door frame on the west, or right, side is about five inches wide and has a metal "push plate" mounted on it. There is no knob or handle on the door, and on February 4, 1948, there was no bar or other device across the panel upon which one could push in order to open the door.

There is a handle on the outside of the door for the use of persons desiring to enter the building. At a point on the floor of the corridor about eight and one-half inches south (outside) of the hinged edge of the door, is a plug or door stopper. A hook is attached to this plug. A screw eye is attached to the outside of the door at a point eight and one-half inches from its hinged edge. When the hook is inserted in the screw eye, the door is fixed in an open position.

The level corridor extends for a distance of eleven feet south of the door, and then seven steps lead down to the sidewalk level on Jefferson street. At about the sidewalk level, there is an accordian type steel gate, which can be extended and locked to bar entrance to the steps and corridor. The double doors at the north end of the corridor can also be locked and the corridor thereby closed to all traffic.

In the late afternoon of February 3, 1948, appellants discovered that the plate glass in the single door at the south end of the corridor had been broken. They closed off the corridor by locking the steel gate and the double doors, removed the glass from the door, and placed an order with a glass company to have the glass replaced.

At about 8:30 the next morning, February 4th, on orders of appellants' building superintendent, the corridor was opened to traffic, although another glass had not yet been placed in the door. The employee who unlocked the steel gates and the double doors also opened the unrepaired door and hooked it in that position. No signs warning of the condition of the door were posted.

At about 9:10 a. m., appellants' resident manager noticed that the door, which was hooked open, had not yet been repaired and that the corridor was open to use. He called the glass company and was told that the men "were either there or would be there immediately" to replace the glass. The glass repair work was done sometime between 9:45 and 10:00 a. m.

At some time between 9:10 and 9:45 a. m., respondent, accompanied by two clients, left his office, descended by elevator to the second floor, and entered the Jefferson street corridor for the purpose of leaving the building. It had been his custom to use this corridor for many years.

The still unrepaired door was then in a closed position. By what means it had become unhooked and closed is not shown by the record.

Respondent was talking with his clients as he approached the defective door, and there was evidence from which the

jury could have found that he was not looking at the door as he approached it and extended his arm and hand to push it open. In any event, he did not notice that the glass had been removed from the door. He did not push upon the five-inch wide metal frame of the door, but upon the panel where the glass had previously been. When his hand met no resistance from the door, respondent was unable to halt himself. He tripped over the thirteen-inch high door frame and fell or somersaulted through the panel opening. He picked himself up, expressed anger, and proceeded with his clients to the court house, where he tried a lawsuit that day.

Respondent reported the accident to appellants on the following day, but made no claim of serious injuries at that time. He was stiff and sore, particularly in his neck and low back, for several days afterwards, but then put the incident out of his mind. He testified that he began experiencing pain in his left arm and shoulder by late summer of 1948. He did not consult a doctor other than by telephone until February, 1949 (one year after the accident), at which time he thought that he had a heart ailment. Until late 1950, he was not aware of any connection between his accident of February 4, 1948, and the increasingly severe arm and shoulder pains that he was then experiencing. The complaint in this action was filed February 1, 1951. We need not, in this opinion, further discuss respondent's injuries nor the expert medical testimony introduced by the parties at the trial.

The material portion of the order granting respondent a new trial reads as follows:

". . . the court now being fully advised in the premises, does

"ORDER that the verdict of the jury heretofore rendered in this cause be, and the same is hereby, vacated, set aside and held for naught, and plaintiff is hereby granted a new trial for the following definite reasons:

"(a) That substantial justice has not been done by the verdict of the jury, to the prejudice of the plaintiff.

"(b) That the court erred as a matter of law in not withdrawing the issue of contributory negligence of the plaintiff from the consideration of the jury and in giving to the jury

Instructions Nos. 7, 11, 12, 13, 14, and 15 concerning contributory negligence because there was no substantial evidence of contributory negligence on the part of the plaintiff which justified the submission of that issue to the jury.

"(c) That the court erred as a matter of law in giving to the jury Instruction No. 18 for the reason that said instruction was not a correct statement of the law as applied to the evidence in this case in that it withdrew from the jury the right to consider whether the defendants had discharged their full duty to the plaintiff by merely 'hooking' the door in an open position at a time when there was no glass in it and denied to the plaintiff the right to have the jury consider the 'foreseeability' of said door becoming unhooked and swinging to a closed position so as to create a trap and a place of danger for people lawfully using the corridor and said door; said instruction was likewise erroneous in that it conflicted with Instruction No. 19, which correctly stated the law and thus the jury was given two conflicting rules of law concerning the defendants' duty to the plaintiff under the evidence as admitted in the case."

We shall first discuss the court's reason (b), quoted above.

█ There were two allegations of respondent's contributory negligence, upon both of which the court instructed the jury: (1) pushing upon the "glass" instead of the door frame, and (2) failing to keep a proper lookout as he approached the door. We are of the opinion that whether a reasonably prudent person would push upon the glass portion of the door instead of the frame is a matter upon which the minds of reasonable men might differ. It was, therefore, a question for the jury to determine.

We do note that the instruction on this phase of the case refers only to the "push plate" mounted on the door frame. We believe that the "push plate" should not be so emphasized and that the door frame should be referred to in the instruction.

As for the question of respondent's keeping a proper lookout while attempting to open the door, we are of the opinion that it, too, was properly a question for the jury. We have heretofore noted that the jury could have found from the evidence that respondent did not look at the door as he extended his arm to push it open.

We, therefore, conclude that it was not error for the court to submit to the jury, under proper instructions, the issue of respondent's contributory negligence.

With reference to the court's reason (c), quoted above, we think that the trial court was correct in holding that it had committed prejudicial error in giving instruction No. 18, which reads as follows:

"I instruct you that if you find from the evidence that an employee of the defendants *hooked* the door in question in an open position at a time when it had no glass in it, and that it was reasonably safe for persons to use the corridor while the door was so *hooked* in an open position, then, unless you further find that after the door was so *hooked* the defendants were negligent in some manner directly and proximately causing plaintiff's injury, your verdict must be in favor of the defendants." (Italics ours.)

Instruction No. 19 reads as follows:

"I instruct you that when the defendants learned that the glass in said door had been broken and removed therefrom, it became their nondelegable duty to take such steps, as a reasonably prudent person would have taken, as would *put and keep* said corridor and door in a reasonably safe condition. Failure so to do would render defendants liable to the plaintiff if you further find that he was proximately injured by reason of such failure on their part." (Italics ours.)

■ Appellants owed to respondent as their tenant the legal duty of maintaining the corridor in a reasonably safe condition. *Andrews v. McCutcheon,* 17 Wn. (2d) 340, 135 P. (2d) 459, and cases cited. The door with its glass removed was a source of potential danger. The risk reasonably to be perceived defines the duty to be obeyed. *Palsgraf v. Long Island R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253.

After opening the corridor to public use, did appellants discharge their full duty by merely hooking the defective door in an open position, or did they have the additional duty of foreseeing and guarding against the possibility that it might become unhooked through the inadvertent or intentional act of an employee or some third person?

■ The range of reasonable apprehension or foreseeability, if varying inferences from the evidence are possible, is a question for the jury. *Eckerson v. Ford's Prairie School Dist. No. 11 of Lewis County,* 3 Wn. (2d) 475, 101 P. (2d) 345. *Palsgraf v. Long Island R. Co., supra.* In view of the potential danger which threatened if the door should become unhooked, and the cold weather outside (between 34 and 43 degrees Fahrenheit) which might have caused a discomforted tenant, meddler, or other person to unhook and close the door without noticing its dangerous condition, we believe that the possibility of the door's becoming closed was reasonably to be anticipated. The element of foreseeability contained in instruction No. 19 was properly submitted to the jury.

■ We must reject appellants' argument that they cannot be charged with negligence unless it be established by competent evidence that the door had been closed for a sufficient period of time prior to the accident to charge them with notice that it had been closed, or unless they had actual notice that it had been closed. This is not a case involving a dangerous condition created upon the premises by the primary act of a third person, but is one in which the danger was recognized by appellants and was under their control.

■ Appellants also argue that the element of foreseeability was, in any event, covered by instruction No. 19. However, instruction No. 18 was inconsistent with No. 19 because it permitted the jury to return a verdict for appellants solely on the uncontradicted testimony of their resident manager that the door was hooked in an open position at 9:10 a. m. that morning. It was prejudicial to respondent, since it conflicted with instruction No. 19, which permitted the jury to consider the extent of appellants' duty to *put and keep* the corridor in a reasonably safe condition. The conflict between the two instructions could only have confused the jury upon this vital issue.

Appellants' chief argument, however, is based on their claim that respondent failed to request an instruction on foreseeability and was not, therefore, entitled to a new trial

because of the failure of the court to instruct thereon in No. 18. They rely upon *Lamping v. Ripley,* 178 Wash. 206, 34 P. (2d) 459.

Respondent requested an instruction reading as follows:

"It appears from the evidence without dispute that the steel gates were unlocked on February 4, 1948, at about 8:00 A. M., by one Howard Todd, an employee of the defendant acting under orders from defendants, and that he hooked the door in question in an open position at a time when it had no glass in it. There is no evidence as to who unhooked the door prior to the plaintiff's fall.

"Under the circumstances it was the non-delegable duty of the defendants to secure that door in such a manner that it would remain in an open position or to guard it, or to post warning signs concerning it. Defendants under these circumstances cannot escape liability because the door was unhooked by an unknown person."

The element of foreseeability is inherent in the requested instruction, which appears to be the source of instruction No. 19. While the court properly concluded not to instruct as a matter of law that appellants were *bound* to anticipate the interference of some outside force or person, the requested instruction was adequate to call to the court's attention the element of foreseeability.

Appellants also challenge the adequacy of the exception taken by respondent to the court's giving instruction No. 18, but we think that the grounds stated for his exception were sufficiently specific to apprise the court as to the necessity of including the element of foreseeability. Rule 10, Pleading, Practice and Procedure, 34A Wn. (2d) 75.

We, therefore, conclude that the court did not abuse its discretion in granting respondent a new trial for reason (c) in its order herein quoted. By reason of this conclusion it is not necessary that we discuss the adequacy of the court's reason (a), "That substantial justice has not been done . . ." under Rule of the Superior Courts 16, 34A Wn. (2d) 117. See *Mulka v. Keyes, ante* p. 427, 249 P. (2d) 972.

The order granting respondent a new trial is affirmed.

SCHWELLENBACH, C. J.; MALLERY, GRADY, and WEAVER, JJ., concur.