[No. 32314.  Department One.  September 4, 1953.]

CARL PATE, *Respondent,* v. GENERAL ELECTRIC COMPANY *et al., Appellants.*[1]

---

[1]Reported in 260 P. (2d) 901.

*Moulton, Powell, Gess & Loney,* for appellants.

*Tonkoff & Holst* and *Blaine Hopp, Jr.,* for respondent.

WEAVER, J.—Plaintiff was injured while engaged in extra-hazardous work. No report of the accident was made to the state department of labor and industries. No claim was filed by plaintiff, nor by anyone in his behalf, for benefits under the workmen's compensation act. Plaintiff, in his brief, describes his action against defendant employers as follows:

"This is not an action against an employer for injuries received in extra-hazardous employment. Instead, this is an action against the defendants because their employee physicians utterly failed to fulfill their statutory duty to inform the injured workman of his rights under the Compensation Act; that as a direct result of this failure the plaintiff has forever lost all of the benefits of the Workmen's Compensation Act."

The trial judge, in a memorandum opinion, describes plaintiff's action in these words:

"In the instant case, the theory of liability is based upon the deprivation, through the alleged negligence or fraud of the employer, of the employee's right to participate in the benefits of the Workmen's Compensation Act. In other words, the gist of plaintiff's claim for redress is not the physical injury, which he has suffered, but rather the loss of his statutory remedy to be compensated therefor under the Workmen's Compensation Act."

Defendant employers appeal from a judgment entered upon a jury's verdict against them.

The facts necessary for our decision are these:

Plaintiff, a steamfitter, was an employee of Morrison-Knudson Company, a subcontractor of General Electric Company on the Hanford project at Richland, Washington. The two companies operated under a war project insurance rating plan with the department of labor and industries pur-

suant to Rem. Supp. 1943, § 7796-25. The doctors involved were full-time employees of defendants.

February 24, 1948, plaintiff fell. His left leg was doubled under him. He suffered a severely sprained ankle. He was taken to a company first-aid station and then to the hospital for an X ray. The hospital records show: "Ankle and lower leg, tender and swollen—some limitation of motion."

Plaintiff testified:

"A. After the x-ray was taken the doctor came out and says, 'Well, there is no broken bones and you should return to work, regardless of whether you do anything or not, just be on the payroll and keep the accident reports down.' He said 'You have a bad sprain.' Q. Did he say anything about filling out a claim for workmen's compensation? A. Yes. Q. What did he say? A. He said he didn't think it was necessary to fill out an accident report on a sprained ankle."

Plaintiff continued to report for work. For a week or so he "sat on a nail keg and made coffee," before they permitted him to do anything further. He remained on the payroll until June 22, 1949. He received treatment for many months, but was not charged for the medical treatment he received.

On cross-examination, plaintiff testified:

"Q. It never occurred to you at any time during the time this was going on you shouldn't be making application for industrial insurance? A. *No. I thought it was the doctor's place to tell me it was bad enough to make one out. Q. The only time a statement was made to you by a doctor, was the doctor who examined the x-ray? A. That's right. Q. That is the only doctor that talked to you? A. Yes, and he told me 'you have no broken bones, just a sprain and there is no need to make out an application for insurance.' Q. Did you lose any time from your work or get any reduction in pay because of the fact you didn't report for work, from the time of your injury until you terminated on June 22, 1949? A. That I did not. Q. You were reporting every day? A. I was reporting but not working.*" (Italics ours.)

Plaintiff testified that, within thirty to sixty days after the accident, one of the physicians employed by defendants informed him that he had varicose veins in his left leg and that they were his "own personal injury." (The medical

chart notes such condition existed on March 9, 1948, fourteen days after the accident.) On March 30, 1948, plaintiff was discharged from medical care.

It is not necessary for us to detail further the condition of plaintiff's leg. Later, after his employment was terminated, an operation was performed to ligate the veins. He is still disabled by reason of the condition of his leg. There is medical testimony that the varicose veins resulted from the fall in 1948, and that in all probability it will be necessary to amputate the leg within five years. Plaintiff did not file a claim within one year of his accident, as required by Rem. Rev. Stat., § 7686 (d) [cf. RCW 51.28.050].

The trial court instructed the jury on two theories which had been pleaded in plaintiff's complaint—namely, negligence of defendants or fraud. The jury returned a verdict in favor of plaintiff. By special interrogatory, the jury found that defendants were liable to plaintiff by reason of their negligence in not informing him of his rights under the workmen's compensation act. Thus, the theory that defendants had practiced a fraud upon plaintiff was rejected. The jury having rejected the theory of fraud, we are not called upon to discuss it, and we therefore express no opinion upon that theory.

The crux of the problem, presented by appropriate assignments of error, is this:

No claim for benefits having been filed within the statutory period under the workmen's compensation act by an injured workman for a compensable injury, is an employer liable to him in damages (measured by what the workman would have received under the act) upon the theory of negligence, when (a) the employer does not report the accident to the department of labor and industries, and (b) a physician in the full-time employment of the employer does not inform the injured workman of his rights under the workmen's compensation act?

The essential elements of actionable negligence are (1) the existence of a duty, (2) a breach thereof, and (3) a resulting injury. *McCoy v. Courtney,* 25 Wn. (2d) 956, 172

P. (2d) 596, 170 A. L. R. 603 (1946); *Laurelon Terrace Inc. v. Seattle,* 40 Wn. (2d) 883, 246 P. (2d) 1113 (1952).

It should be borne in mind that the physicians involved were full-time employees of defendants. This is not a situation where an employer refers an injured workman to a physician practicing his profession independently of the employer, nor is it a situation where an injured employee consults a physician upon his own initiative.

Whether a duty exists is a question of law. In the absence of statutory requirement, defendants and their full-time physician employees had no legal duty to inform plaintiff of his possible rights under the workmen's compensation act. We turn, therefore, to the statutes.

Rem. Rev. Stat., § 7689 [*cf.* RCW 51.28.010], provides:

"Whenever any accident occurs to any workman it shall be the duty of such workman or someone in his behalf to forthwith report such accident to his employer, superintendent or foreman in charge of the work [this was done], and of the employer to at once report such accident and the injury resulting therefrom to the department, and also to any local representative of the department. [This was not done.]"

It must be noted that the employer is only required to *report* the accident; he is not required by the statute to file a claim for compensation on behalf of the injured workman. In discussing a section of the act requiring such a report by the employer, this court said, in *Stertz v. Industrial Insurance Commission,* 91 Wash. 588, 606, 158 Pac. 256 (1916):

"By no language whatever is this section made the basis of compensation or so connected with the compensatory provisions of the law as to give it other than statistical value for information to the department."

Had such a *report* been filed by the employer, plaintiff could find no solace therein, for

"The filing of an *application* is the exclusive manner in which action by the department may be had in any particular case, and the right of the workman to compensation secured." (Italics ours.) *Wheaton v. Department of*

*Labor & Industries,* 40 Wn. (2d) 56, 58, 240 P. (2d) 567 (1952).

The right to benefits under the act must be founded upon a claim therefor, not upon a report of the accident to the department of labor and industries.

Rem. Rev. Stat., § 7686 (a) [*cf.* RCW 51.28.020], provides:

"Where a workman is entitled to compensation under this act he shall file with the department, his application for such, together with the certificate of the physician who attended him, and it shall be the duty of the physician to inform the injured workman of his rights under this act and to lend all necessary assistance in making this application for compensation and such proof of other matters as required by the rules of the department without charge to the workman."

(RCW 51.28.020 does not contain the exact wording of the original law; it omits the word "duty" from its text. See Laws of 1927, chapter 310, § 6, p. 847.)

The statute requires that the workman assert his right to compensation by filing an application with the department. When such claim is filed, it must be accompanied by a certificate of the physician who attended him. Such certificate can be secured by the workman only from the physician. When the certificate is requested, it then becomes

". . . the duty of the physician to inform the injured workman of his rights under this act and to lend all necessary assistance in making this application for compensation and such proof of other matters as required by the rules of the department without charge to the workman."

The duty which the statute places upon the physician in the preparation of such certificate and application, is that of telling the applicant the relationship of his specific injury to his rights for compensation therefor, and the duty of making it possible for the applicant to furnish to the department accurate and complete information in support of his application. It is not the purpose of the statute to place upon the physician the primary duty of timely instituting a claim on behalf of the workman or of advising him that he should, or should not, make such claim. The responsibility of initiating a claim is upon the workman. When it has

been initiated, it then becomes the duty of the physician to perform his statutory duties as outlined.

Although the factual situation was different, and the opinion designated as "not authoritative" (27 Wn. (2d) 932) because the appeal was dismissed pending a rehearing, the following language appearing in *Leschner. v. Department of Labor & Industries*, 27 Wn. (2d) 911, 927, 185 P. (2d) 113, is particularly apt:

"In these circumstances, it was erroneous to conclude, as the trial court did, that '. . . claimant did all she could do or was required to do and relied upon the physician's statement that the claim was properly attended to, and further did, through another physician as soon as she found the real result of the accident, file in all promptness a proper claim.' Such a finding ignores the fact that the duty to file her claim rested with the respondent, not with her physician, or with the department; and further ignores the inescapable fact that she knew, almost from the time of the accident, of the disabling effect of her injury, and of her right to workmen's compensation."

If the injured workman cannot rely upon the physician's statement that he had filed a claim for compensation, when in fact he had not, how can it be said that the physician's silence constituted a breach of duty?

This is not a situation where the physician refused to co-operate, or where a physician convinced the workman that he should not file a claim for compensation. The silence of the physicians breached no duty, statutory or otherwise, owed to plaintiff. Plaintiff knew at least ten months before the expiration of the period in which he could file a claim, that he had varicose veins, from which he continued to suffer. While a layman might not know the implications of an injury as it relates to his future welfare, he has the obligation resting upon him in law to know the provisions of the act as it relates to him, and he has one year from the date the injury occurred in which to assert his rights. Plaintiff testified that he had received workmen's compensation for a previous injury in the state of Oregon.

If the particular deprivation with which we are dealing here be harsh or inconsistent with enlightened social policy,

then it is up to the legislature to change the statute and cast a positive duty upon physicians and their employers to meet the circumstances of this case.

The judgment is reversed, with instructions to dismiss the action.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

---

November 17, 1953. Petition for rehearing granted.

[1] Reported in 260 P. (2d) 905.