[No. 34639. Department Two. July 2, 1959.]

E. D. LEWIS et al., *Appellants*, v. VERNON H. SCOTT, *Respondent*.[1]

[1]Reported in 341 P. (2d) 488.

*Gavin, Robinson & Kendrick* and *Robert R. Redman,* for appellants.

*George W. Wilkins,* for respondent.

OTT, J.—E. D. Lewis and Beulah B. Lewis, his wife, were the owners of a nearly completed wood and brick veneer residence, which was under construction in Yakima county. Vernon H. Scott, doing business as Yakima Sheet Metal Works, was engaged in the business of selling, installing, and servicing heating equipment for dwellings. He sold a Montag constant-ignition type oil burning furnace to the Lewises, and installed it in the dwelling shortly prior to December 23, 1954. During the noon hour of December 23rd, a fire broke out directly from the furnace and destroyed the entire building, including carpenter tools and equipment belonging to the workmen and the owner.

December 27, 1954, a chemical engineer, experienced in fire investigations, examined the debris for the purpose of ascertaining the cause of the fire. His investigation disclosed that, in the installation of the furnace and its connection with the oil tank, the suction and return lines had been crossed. The suction line extended into the tank about four inches. The return line, which carried excess oil and air

from the pump to the tank, extended nearly to the bottom of the tank. The engineer concluded that the excess oil and air thus pumped into the bottom of the tank created a bubbling condition therein; that, while the furnace was burning and after the oil in the storage tank had been lowered four inches to the bottom of the suction line, the pump intermittently drew oil and air through it to the furnace burner, and that this process produced oil vaporization in excess quantities, causing the explosion which resulted directly in the destruction of the building by fire.

The Lewises and the workmen instituted this action for damages, alleging, *inter alia*, that the defendant, Vernon H. Scott, was negligent in installing the furnace, and that his negligence was the sole and proximate cause of the damage. The defendant's answer denied liability.

The cause was tried to the court, which found, *inter alia*, the following material facts:

Finding of Fact No. 2: "That prior to and at the time in question, defendant Vernon H. Scott . . . was engaged in the business of selling, installing and servicing heating equipment, including oil furnaces for dwelling houses; . . . That defendant held himself out to be skilled in such installations. That the said furnace . . . was resold to plaintiff, E. D. Lewis, by defendant, who installed the same in the partially completed residence of said plaintiff, . . ."

Finding of Fact No. 3: ". . . That at the time the defendant and his employee installed and connected the suction and return lines between the oil burner pump and the tank, the same were mistakenly reversed by installing the line attached to the suction side of the pump so that it extended only approximately four inches down from the top of the tank, and by installing the return line, attached to the return port on the pump, so that the other end extended into the tank to a point about two inches above the bottom. That in actuality said two lines were reversed by defendant at the time of their installation. . . ."

Finding of Fact No. 6: ". . . That the effect thereof was to cause a spurting of oil, of air, and of oil and air, through the nozzle into the fire box in an atomized form, differing from a proper mixture thereof to the extent that the same was not constantly being ignited by the constant

igniters then and there in operation at the end of the nozzle. That this process in turn produced vaporization in excess quantities in the fire box, and when the same was ignited, caused a rapid combustion of sufficient intensity to blow off an elbow from the sheet metal smokestack leading from furnace to chimney, and to cause the door of the furnace to fall open, and the escape from said furnace and stack line of ignited vapors and flames, resulting in the destruction of the dwelling by fire."

Finding of Fact No. 10: "That there was no defect in the furnace, nor in any of the component parts of the furnace assembly, including the Protectorelay, burner and pump. That the only defect present was the crossing of the suction and return lines, which, under the circumstances present, permitted air in minute quantities to pass through the pump and nozzle into the combustion chamber of the furnace. That the said Protectorelay, under the conditions present, did not prevent operation of the pump and burner so as to preclude accumulation of excess unignited vapors in said combustion chamber. That the said Webster pump did not prevent, under conditions present, intermittent spurts of oil, of air, and of oil and air of improper mixture, from being introduced into the combustion chamber. . . ."

Finding of Fact No. 12: Damages to the respective plaintiffs were itemized as follows: Klomp Bros. $636.80, Hartoon & Sons $161, and the Lewises $79.55 and $13,636.58.

Finding of Fact No. 4: ". . . prior to the fire in question the only result of such crossing, within the knowledge of the witnesses testifying, has been to cause the furnace to cease operating when oil in the tank is consumed to a point just below the end of the line in the tank which leads to the intake port on the burner, the only effect being the same as running out of oil when the lines are properly installed."

Finding of Fact No. 9: "That at no time prior to the fire did defendant himself have knowledge that the lines were crossed, or that such crossing would or might create any dangerous condition. . . ."

From these facts, the court concluded:

". . . That there was no reason at any time prior to the fire in question to suspect, anticipate, or know the said crossing of the lines would result in the fire in question [a conclusion, although part of finding of fact No. 10]. . . .

"That the actual damage resulting from the crossing of the fuel lines was not a result, nor even in the general field of danger, which defendant should have reasonably foreseen or anticipated as a result of crossing of said lines; and therefore defendant is not liable to plaintiffs herein."

From the judgment of dismissal, the plaintiffs have appealed.

■ No error is assigned to the court's findings of fact. They are, therefore, the established facts of the case.

The appeal presents a single issue of law: Did the trial court err in concluding, as a matter of law, that the injury sustained by the appellants is not compensable, as the resulting damage was not a foreseeable consequence of the negligence of the defendant?

■ The elements of actionable negligence are (1) the existence of a duty, (2) the breach thereof, which must be a proximate cause of the injury, and (3) the resulting damage. *Pate v. General Electric Co.*, 43 Wn. (2d) 185, 260 P. (2d) 901 (1953); *McCoy v. Courtney*, 25 Wn. (2d) 956, 172 P. (2d) 596, 170 A. L. R. 603 (1946); 65 C. J. S. 324, § 2.

Do the findings of fact in the instant case establish these elements?

■ Findings Nos. 2 and 3 establish the first two elements of actionable negligence, (1) the duty to install the furnace properly, and (2) the breach of that duty by the reversal of the lines. Findings Nos. 6 and 10 establish that the breach was the sole and proximate cause of the damage. Finding No. 12 establishes the third element, the resulting damages to the respective appellants. Thus, all of the elements establishing actionable negligence were found by the court to be present. Nevertheless, the court concluded therefrom that there was no liability because the *result* was *unforeseeable*, and, in its memorandum opinion, relied upon four decisions of this court. The cited cases are not apropos to the issue presented here for the following reasons:

(a) In *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853 (1937), the plaintiff alleged that the de-

fendant railroad company had breached its duty to him by not having proper warning devices at a railroad crossing. The court held that there was no breach of duty to warn because, "When a train actually occupies the crossing, that in itself supersedes all other warnings and gives actual notice by its own presence."

(b) *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn. (2d) 475, 101 P. (2d) 345 (1940), *Berglund v. Spokane County*, 4 Wn. (2d) 309, 103 P. (2d) 355 (1940), and *McLeod v. Grant County School Dist. No. 128*, 42 Wn. (2d) 316, 255 P. (2d) 360 (1953), involve *reasonable foreseeability as to intervening causes*, which issue is not here present.

■ Results which follow in unbroken sequence (without an intervening efficient cause) from the original negligent act, are natural and proximate. The wrongdoer is responsible for the results, even though he could not have foreseen the consequences of his original negligent act. *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 690, 163 Pac. 9 (1917), 1 Cooley on Torts (4th ed.) 140, § 53. See, also, *Schatter v. Bergen*, 185 Wash. 375, 55 P. (2d) 344 (1936); 2 Restatement, Torts, 1173, § 435.

This rule has been adopted in other jurisdictions. See *Chicago, Milwaukee; St. Paul & Pac. R. Co. v. Goldhammer*, 79 F. (2d) 272 (1935); *Affolder v. New York, Chicago & St. Louis R. Co.*, 79 F. Supp. 365 (1948); *Monterrosa v. Grace Line, Inc.*, 90 Cal. App. (2d) 826, 204 P. (2d) 377 (1949); *Lynch v. Fisher*, 34 So. (2d) (La. App.) 513 (1948); *Campbell v. Pittsburgh*, 155 Pa. Super. Ct. 439, 38 A. (2d) 544 (1944); *Daugherty v. Hunt*, 110 Ind. App. 264, 38 N. E. (2d) 250 (1941); *Mrazek v. Terminal R. Ass'n*, 341 Mo. 1054, 111 S. W. (2d) 26 (1937); *Shipley v. Pittsburgh*, 321 Pa. 494, 184 Atl. 671 (1936).

■ Applying this rule to the facts in the instant case, liability attaches as a result of the negligent crossing of the lines, even though there was no evidence that a dwelling had previously been destroyed as a result of such a breach of duty. Where, as here, the undisputed facts establish

that it did happen this time, the wrongdoer cannot shelter himself from liability under the defense that the actual consequence was one that he did not know would occur as a result of his negligence.

■■ The court found that the respondent held himself out to be an expert in the field of furnace installation. The knowledge of a reasonably prudent expert is imputed to him. As such, he knew or should have known that improperly controlled vaporization in a furnace creates a dangerous and hazardous condition, and that, if such a condition exists in a furnace fire box and sparks from the ignition system come in contact with the vaporized oil, an explosion of unlimited intensity is the natural and direct result. The respondent could well have anticipated that damage would flow from his careless act, if nothing more than the inconvenience and delay in his installing the furnace properly, or the cost of proper installation in the event respondent refused to do so. Likewise, respondent could reasonably have forseen that the faulty installation in December could have resulted in damage to appellants from the failure of the furnace to function, causing a lack of heat to protect the plaster or other finish work and to prevent the freezing of the water system in the dwelling. Some damage was foreseeable from his breach of duty, even though the exact extent thereof was not anticipated. In the light of respondent's expert knowledge, reasonable foreseeability of damage to others existed. See *Harvey v. Auto Interurban Co.,* 36 Wn. (2d) 809, 220 P. (2d) 890 (1950); *Carley v. Allen,* 31 Wn. (2d) 730, 198 P. (2d) 827 (1948); *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769 (1948); *Hunter v. Quality Homes,* 45 Del. 100, 68 A. (2d) 620 (1949); *Arkansas Machine & Boiler Works v. Moorhead,* 136 Ark. 18, 205 S. W. 980, 1 A. L. R. 1652 (1918); Prosser on Torts (2d ed.) 124, 131 *et seq.,* § 31.

■■ What we have heretofore said with reference to breach of duty does not emanate from a breach of a contractual relationship. In the law of negligence, liability attaches to the wrongdoer because of his breach of duty in

performing his work negligently, which results in injury to others. In *Hunter v. Quality Homes, supra,* the court said [p. 107]:

". . . Matters of common knowledge warn the installer that, if his work is done negligently, some one is likely to be injured. Faced with this warning, he assumes a certain duty to others—the duty to do the work with reasonable care and diligence—for the breach of which the law imposes a liability. This liability is based not upon contract but upon negligence. . . ."

■■ Prosser on Torts (2d ed.) 491, § 83, states:

". . . When goods are sold by one person to another, it is now well established that the seller is under a duty to exercise the care of a reasonable man of ordinary prudence to see that the goods do no harm to the buyer. This duty, while it arises out of the relation created by the contract, is not identical with the contract obligation, but is merely a part of the general responsibility, sounding in tort, . . ."

■■■ Assuming that the loss is greater than the wrongdoer anticipated, the one whose negligent act caused the injury should bear the loss. Prosser on Torts (2d ed.) 262, § 48. In the instant case, the fact that the wrongdoer did not realize, at the time of the installation, that he had crossed the lines does not relieve him of liability. Actionable negligence, based upon a wrongdoer's lack of due care, does not include the establishment of an element of intent.

" 'Negligence is conduct, and not a state of mind.' In most instances, it is caused by heedlessness or carelessness, which makes the negligent party unaware of the results which may follow from his act." Prosser on Torts (2d ed.) 119, § 30.

■■ We conclude that unforeseeability of the consequences of a breach of duty to the person for whom it is to be performed does not relieve the wrongdoer of liability, when all of the elements of actionable negligence are established.

We have not discussed those cases which involve the issue of unforeseeable plaintiffs, such as *Palsgraf v. Long Island*

*R. Co.*, 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253 (1928), since that issue is not here present. Neither have we discussed those cases which involve the issue of unforeseeability of concurring or intervening causes of third parties as being within the general field of damages, such as *Eckerson v. Ford's Prairie School Dist. No. 11, supra, Berglund v. Spokane County, supra, McLeod v. Grant County School Dist. No. 128, supra,* and *Kennett v. Yates,* 41 Wn. (2d) 558, 250 P. (2d) 962 (1952), except to state that they are not apropos, as that issue likewise is not here present.

 Finally, respondent contends that the evidence sustains the court's conclusions, although its findings of fact do not support them, and that, under the established rule, the trial court should be affirmed.

We find no merit in this contention for the reason that there is substantial evidence in the record which sustains the trial court's findings of fact. *Williams Tilt-Up Contractors, Inc. v. Schmid,* 52 Wn. (2d) 429, 326 P. (2d) 41 (1958), and case cited.

The amount of the damages resulting from the injury has been stipulated by counsel for the respective parties and incorporated in the findings of fact. The judgment is reversed, and the cause remanded with instructions to enter judgment for the appellants.

WEAVER, C. J., HILL, and ROSELLINI, JJ., concur.

DONWORTH, J. (dissenting)—Except as otherwise stated below, I do not disagree with the law cited by the majority as authority in support of their conclusion. I do, however, disagree with their application of that law to the facts of this case. In my opinion, the majority erroneously views respondent's conduct in retrospect, presumes his negligence, and treats this case as simply involving the question of damages recoverable where negligence is established.

The facts, as analyzed in the majority opinion, are that respondent dealer sold to appellants Lewis a floor furnace which he installed in the latter's partially constructed house. In the installation process, respondent inadvertently

(termed "mistakenly" by the trial court in its fourth finding, and "negligently" by the majority) misconnected the intake and return lines at the pump which feeds the furnace. This permitted vaporization of excess quantities of oil and air in the combustion chamber. When ignited, this mixture caused rapid combustion of sufficient intensity to permit fire to escape from the furnace, resulting in the destruction of the house and the building materials and tools therein.

In addition to these facts, it should also be noted that the furnace assembly included two safety devices, both of which were designed to prevent any danger of explosion or "rapid combustion." These mechanisms are described by the trial court in findings of fact No. 7 and No. 8, as follows:

"That the . . . stack-relay system provided in the installation by defendant was a control furnished by said Montag, Inc., known as a 'Protectorelay', being a trade name for the stack-mounted constant ignition and safety control manufactured by Minneapolis-Honeywell Regulator Company, designed to cycle and safeguard the operation of domestic oil burners such as the one here in question, and prevent any danger arising when flame is not properly established during a period when the burner is in operation. That said device was furnished by said Montag, Inc., to defendant as a component part of the said furnace assembly, to accomplish said protection.

"That the oil pump, included with the furnace, burner unit and controls in the complete furnace equipment obtained and installed by defendant as aforesaid, was a Webster electric two-stage, gear type fuel pump designed and intended to prevent air from being introduced through the burner nozzle into the furnace, either alone or mixed with oil, to an extent that would permit, create, or contribute to the creation of any condition of danger."

But, the trial court also found:

"That there was no defect in the furnace, nor in any of the component parts of the furnace assembly, including the Protectorelay, burner and pump. That the only defect present was the crossing of the suction and return lines, which, under the circumstances present, permitted air in minute quantities to pass through the pump and nozzle into the combustion chamber of the furnace. That the said Protectorelay, under the conditions present, did not prevent

operation of the pump and burner so as to preclude accumulation of excess unignited vapors in said combustion chamber. That the said Webster pump did not prevent, under conditions present, intermittent spurts of oil, of air, and of oil and air of improper mixture, from being introduced into the combustion chamber. *That there was no reason at any time prior to the fire in question to suspect, anticipate, or know the said crossing of the lines would result in the fire in question.*" (Italics mine.)

Hence, although two safety mechanisms supplied with the furnace were not defective, they did not function properly under the peculiar conditions existing (failing to do that which they were, in part, designed to do), and a fire resulted, which, when viewed in retrospect, could logically be attributed only to the crossing of the lines.

The majority, in quoting finding of fact No. 4, omit the first clause thereof:

"That such crossing of lines has frequently occurred in furnace installations in the past, . . ."

To me, this factor appears extremely significant in determining whether respondent's misconduct constituted negligence, in the legal sense, which resulted in legal liability to the several appellants.

Simply stated, respondent takes the position that he is not liable because, even assuming the verity of the court's finding that he "mistakenly crossed" the lines, such mistake does not constitute negligence in a legal sense. Respondent argues that the only evidence contained in the record shows that in similar furnace installations such a mistake in crossing fuel lines "frequently" occurs and, in the experience of all experts who testified on this subject, the only result which could be reasonably foreseen to result therefrom would be that the flame would be extinguished, thereby creating a safe condition. Based upon this expert testimony, respondent asserts that no hazard or danger of harm to any of appellants' property existed (other than by freezing) which he could, or should, in the exercise of reasonable care, foresee and guard against. He, therefore, contends

that he was not negligent; hence, not liable to any of appellants.

On the other hand, appellants assert that, since respondent's crossing of the lines was a direct and proximate cause of their loss, respondent is liable.

The majority of this court adopt the latter argument.

The trial court correctly found that respondent crossed the fuel lines. By so doing, he breached his contract with appellants Lewis that imposed upon him "the duty to install the furnace properly." But, does this breach of contract constitute an element of actionable negligence as to appellants Lewis? A second question also arises as to whether, by so doing, respondent breached any existing duty owing to appellants Klomp (whose carpenter tools and equipment were destroyed) and appellants Hartoon (plastering contractors, whose tools and equipment were likewise destroyed). The majority resolve both of these questions in the affirmative. I am compelled to conclude otherwise.

It is fundamental in the law of negligence that:

"Legal liability for negligence is based on conduct involving *unreasonable risk* to another, which must be established by evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances." (Italics mine.) 65 C.J.S., Negligence, § 2(d). 2 Restatement, Torts, 738, § 282; 2 Harper & James, The Law of Torts, 896, § 16.1.

This thought is accentuated in Prosser on Torts (2d ed.) 258 *et seq.*, § 48 (cited by the majority), as follows:

"*Negligence,* it must be repeated, is conduct which falls below the standard established by law for the protection of others against *unreasonable risk. It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability.* . . ." (Italics mine.)

See, also, 2 Restatement, Torts, § 282, comment b:

"The concept of unreasonable risk includes the existence of a risk and also its unreasonable character."

Not only must there be a risk of harm to another which is unreasonable, but the actor should recognize that his conduct involves such a risk. See *Winsor v. Smart's Auto Freight Co.,* 25 Wn. (2d) 383, 171 P. (2d) 251 (1946), quoting with approval 2 Restatement, Torts, §§ 289, 291; *Peterson v. Betts,* 24 Wn. (2d) 376, 165 P. (2d) 95 (1946); 65 C. J. S., Negligence, § 1a(6). Or, as we expressed this thought in *Burr v. Clark,* 30 Wn. (2d) 149, 155, 190 P. (2d) 769 (1948):

"The duty to use care is based upon the knowledge of danger, and the care which must be used in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed. 38 Am. Jur. 678, Negligence, § 32; 45 C. J. 651, 653, Negligence, §§ 25, 27."

It has thus been said that "the risk reasonably to be perceived defines the duty to be obeyed. . . ." *Palsgraf v. Long Island R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253 (1928); *Kennett v. Yates,* 41 Wn. (2d) 558, 250 P. (2d) 962 (1952); and that the amount of care exercised must be commensurate with the circumstances. *Ulve v. Raymond, infra.*

As pointed out by the majority,

". . . the court found that the respondent held himself out to be an expert in the field of furnace installation. *The knowledge of a reasonably prudent expert is imputed to him.* As such, he knew or should have known that improperly controlled vaporization in a furnace creates a dangerous and hazardous condition, and that, if such a condition exists in a furnace fire box and sparks from the ignition system come in contact with the vaporized oil, an explosion of unlimited intensity is the natural and direct result. . . ." (Italics mine.)

But this knowledge was valueless to respondent unless he also knew or, in the exercise of reasonable care, should have known that the crossing of the lines would result in "improperly controlled vaporization." Particularly is this true inasmuch as the furnace was equipped with two nondefective operating devices designed to prevent it.

We have repeatedly held that:

" . . . negligence consists in the doing of an act which a reasonable man would not have done, or in the failure to do an act which a reasonable man would have done under similar circumstances." *Sytem Tank Lines v. Dixon,* 47 Wn. (2d) 147, 151, 286 P. (2d) 704 (1955).

See, also, *Fink v. Dixon,* 46 Wn. (2d) 794, 285 P. (2d) 557 (1955); *Thomas v. Casey,* 49 Wn. (2d) 14, 297 P. (2d) 614 (1956); *Ulve v. Raymond,* 51 Wn. (2d) 241, 317 P. (2d) 908 (1957); *Severns Motor Co. v. Hamilton,* 35 Wn. (2d) 602, 214 P. (2d) 516 (1950); 65 C. J. S., Negligence, § 2b; 2 Restatement, Torts, § 284.

Thus, whether respondent was actionably negligent toward any of appellants should be determined by whether he, as a reasonably prudent furnace installer, knew or should have known that his act of crossing the lines might create any risk of harm (hazard) to appellant's property. On the question of respondent's actual knowledge, the trial court found:

"That at no time prior to the fire did defendant himself have knowledge that the lines were crossed, or that such crossing would or might create any dangerous condition. That defendant at the time of initial installation of the furnace and on at least two occasions thereafter prior to the loss in question, checked the operation of the furnace and of the controls and equipment in accordance with standard recognized practice, and that the same all performed satisfactorily, and with no indication of any failure or defect in the operations which they were designed to control."

Concerning the knowledge which respondent, as a reasonably prudent furnace installer, *should* have had, the court found:

"That such crossing of lines has frequently occurred in furnace installations in the past, and that prior to the fire in question *the only result of such crossing, within the knowledge of the witnesses testifying,* has been to cause the furnace to cease operating when oil in the tank is consumed to a point just below the end of the line in the tank which leads to the intake port on the burner, the only effect being the same as running out of oil when the lines are properly installed." (Italics mine.)

In my opinion, these findings of fact (based upon uncontroverted testimony) are decisive of the issue of respondent's negligence and clearly support the trial court's conclusion:

"That the actual damage resulting from the crossing of the fuel lines was not a result, nor even in the general field of danger, which defendant should have reasonably foreseen or anticipated as a result of crossing of said lines; and therefore defendant is not liable to plaintiffs herein."

In the absence of evidence to the contrary, neither trial court nor this court could *presume* that respondent knew, or in the exercise of reasonable care should have known, that his "crossing of the lines" was reasonably likely to jeopardize the safety of appellants' property. We held so in *Burr v. Clark, supra,* which, of all cases cited above, appears closest on its facts to the present.

There, the plaintiff home owners sought recovery of compensation for damage sustained by their heating system as a result of the negligence of defendant's employee in making repairs thereto. In affirming a judgment in plaintiffs' favor, we applied the rule expressed in *Arkansas Machine & Boiler Works v. Moorhead,* 136 Ark. 18, 205 S. W. 980, 1 A. L. R. 1652 (1918), to the effect that:

". . . One holding himself out as a machinist and accepting employment to repair a steam engine is presumed to know the character of the work he is about to do and the results likely to follow a negligent performance of his work, and is therefore liable for the damage proximately resulting from a negligent and unskillful performance of his work. *Gibson, Lee & Co. v. Carlin,* 13 Lea (Tenn.), 440; *Livermore Foundry & Mch. Co. v. Union Com. & Storage Co.,* 105 Tenn. 187, 53 L. R. A. 482; Sutherland on Damages, sec. 702."

However, in the instant case, we should not indulge in any such presumption, because it has been refuted by uncontroverted evidence accepted by the trier of fact. Nor should we, therefore, presume and impute to respondent a knowledge greater than that possessed by the experts in the field of furnace installation who testified. Particu-

larly is this true where, as here, the knowledge imputed (that respondent's crossing of the lines *would* create a risk of harm to appellants' property) is of a highly technical nature and not a matter of such common knowledge as to permit our taking judicial notice thereof. The majority's imputation of such knowledge has the effect of increasing the standard of care owed by respondent from that of reasonable care to absolute insurer.

Even if appellants had introduced evidence of the kind presumed and imputed to respondent by the majority—which they did not—there still would remain a question of fact to be resolved by the trial judge, *viz.*, whether respondent could or should, in the exercise of reasonable care, have foreseen that his act would create any hazard to appellants' property. The range of reasonable apprehension or foreseeability, if varying inferences from the evidence are possible, is a question for the trier of fact. *Kennett v. Yates, supra*; Harper & James, Torts, 936, § 16.10.

It was, therefore, within the province of the trial judge, as trier of fact, to determine from the evidence whether respondent's act of "crossing the lines" created any unreasonable risk of harm to appellants' property, and, if so, whether respondent, in the exercise of reasonable care, should have been aware thereof. The court could and did find from the evidence that respondent was justified in believing that the only probable effect of "crossing the lines" would be the same as if the furnace had entirely consumed its supply of fuel, to wit, that the flame would go out and the furnace would cease functioning. Hence, even if respondent should have known that he had mistakenly reversed the lines, the only danger or risk of harm which he could reasonably anticipate to follow therefrom would be the loss of heat, not rapid combustion.

Having accepted respondent's evidence as to the lack of foreseeability, the trial court properly concluded that respondent breached no legal duty owing to appellants. It follows that appellants, by their proof, failed to sustain their

burden of establishing an essential element of a cause of action for negligence, *viz., breach of duty.*

But the majority hold that, since respondent was under a contract duty to appellants Lewis "to install the furnace properly," which duty he breached, he is liable to *all* appellants for the loss of their property (by fire) because he

" . . . could well have anticipated that damage would flow from his careless act, if nothing more than the inconvenience and delay in his installing the furnace properly, or the cost of proper installation in the event respondent refused to do so. Likewise, respondent could reasonably have foreseen that the faulty installation in December could have resulted in damage to appellants from the failure of the furnace to function, causing a lack of heat to protect the plaster or other finish work and to prevent the freezing of the water system in the dwelling. Some damage was foreseeable from his breach of duty, even though the exact extent thereof was not anticipated. . . ."

Of course, had damage of the kind described above in the majority opinion occurred, respondent would have been liable to appellants Lewis in contract, because it is readily apparent that such damage must have been within the reasonable contemplation of the parties at the time they entered into their contract. *Foss v. Pacific Tel. & Tel. Co.*, 26 Wn. (2d) 92, 173 P. (2d) 144 (1946) (and numerous cases cited in support of Restatement, Contracts, 509, § 330, Wash. Anno. (1935 ed.)).

But, appellants Lewis, like appellants Klomp and Hartoon, brought this action for damages resulting from respondent's alleged *negligence,* not from his breach of contract. Nevertheless, the majority ignore the established standard of diligence in negligence cases—that of the reasonably prudent man— and impose upon respondent the precise duty owed by him to appellants Lewis by virtue of their contract. The majority even extend this contractual duty to appellants Klomp and Hartoon, neither of whom was a party to the contract.

Parenthetically, it seems incongruous that appellants Klomp and Hartoon are permitted to recover damages for

the destruction of their tools by fire simply because respondent could have foreseen that, as a result of his breach of a contractual duty to appellants Lewis (crossing the lines), the latter might suffer inconvenience and lack of heat. Had such damage occurred, it is doubtful that appellants Klomp and Hartoon would have sustained any damage to their tools.

Unfortunately, appellants have sustained severe losses as detailed in finding of fact No. 12, and as stated by the majority. These losses were caused by respondent's crossing of the lines. But, nevertheless,

"Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated." Shearman & Redfield on Negligence 50, § 24, quoted by this court in *Winsor v. Smart's Auto Freight Co., supra.*

See, also, *Johnson v. Central Bldg., Co.,* 35 Wn. (2d) 299, 212 P. (2d) 796 (1949); *Severns Motor Co. v. Hamilton, supra.*

Negligence cannot be assumed because of the mere fact that an accident happened. It must be established by direct evidence or by legitimate inference from established facts. *Evans v. Yakima Valley Transp. Co.,* 39 Wn. (2d) 841, 239 P. (2d) 336 (1952).

Appellants failed to sustain their burden of proving to the satisfaction of the trial judge that respondent could or should, in the exercise of reasonable care, have foreseen that his act of crossing the lines would create any hazard to appellants' property.

In their brief, appellants have presupposed respondent's negligence (failure to exercise reasonable care), and have directed their argument solely to foreseeability with respect to damages recoverable, particularly concerning the manner in which harm occurs. See Restatement, Torts, § 435, as implemented by Restatement, Torts (1948 Supp.),

§ 435. That the majority likewise presuppose respondent's breach of contract as an act actionably negligent is manifest. But, as pointed out in *Palsgraf v. Long Island R. Co., supra:*

"The law of causation, remote or proximate, is thus foreign to the case before us. *The question of liability is always anterior to the question of the measure of the consequences that go with liability.* If there is no tort to be redressed there is no occasion to consider what damage might be recovered if there were a finding of a tort." (Italics mine.)

In my opinion, the majority err in at least one of two respects: (1) In imputing knowledge to respondent as to the results reasonably to be foreseen from crossing the lines, which knowledge was far beyond that possessed by the expert witnesses who testified in this case; or (2) in extending respondent's contractual duty owed to appellants Lewis to *all* appellants, thereby making respondent the absolute insurer of *all* appellants' property.

Two other points mentioned by the majority also merit comment.

First, the quotation from Prosser on Torts. (2d ed.), 491, § 83, relative to liability for breach of implied warranty with respect to goods sold is inappropriate in this action for negligence in installing nondefective goods.

Second, the majority find no merit in respondent's contention that the "evidence sustains the court's conclusions, although its findings of fact do not support them," because there is substantial evidence which sustains the findings of fact made.

This court has consistently held that where the judgment of the trial court is based upon an erroneous ground, it will be sustained if correct upon any ground within the pleadings and established by the proof. *LaHue v. Coca Cola Bottling, Inc.,* 50 Wn. (2d) 645, 314 P. (2d) 421 (1957); *Dixon v. Gustav,* 51 Wn. (2d) 378, 318 P. (2d) 965 (1957); *Forrester v. Craddock,* 51 Wn. (2d) 315, 317 P. (2d) 1077 (1957). In my opinion, the evidence supports the trial court's conclusions of law and its judgment of dismissal.

The reasoning of the majority would seem to have the effect of requiring the *respondent* to assign as prejudicial error, by cross appeal, findings of fact which fail to support the conclusions of law and judgment entered in his favor.

I would affirm the judgment of the trial court, and for the foregoing reasons am compelled to dissent.

December 14, 1959. Petition for rehearing denied.

